**WADE KILPELA SLADE LLP**
Gillian L. Wade, State Bar No. 229124
gwade@waykayslay.com
Sara D. Avila, State Bar No. 263213
sara@waykayslay.com
Collins Kilgore, State Bar No. 295084
ckilgore@waykayslay.com
Marc A. Castaneda, State Bar No. 299001
marc@waykayslay.com
2450 Colorado Ave.
Suite 100E
Santa Monica, CA 90404
T: (310)667-7273

**WADE KILPELA SLADE LLP**
Edwin J. Kilpela, Jr. (*pro hac vice forthcoming*)
ek@waykayslay.com
Paige Noah (*pro hac vice* application forthcoming)
pnoah@waykayslay.com
6425 Living Pl. Suite 200
Pittsburgh, PA 15206

**WADE KILPELA SLADE LLP**
David Slade (*pro hac vice* application forthcoming)
slade@waykayslay.com
Brandon Haubert (*pro hac vice* application forthcoming)
brandon@waykayslay.com
Lucy Holifield (*pro hac vice* application forthcoming)
lholifield@waykayslay.com
1 Riverfront Place
Suite 745
North Little Rock, AR 72114

*Attorneys for Plaintiff Tonya Harris*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONYA HARRIS,<br><br>        Plaintiff,<br><br>        v.<br><br>APPLE, INC.<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>1.    California Negligence<br>2.    California Strict Liability-Design Defect (Risk-Benefit Test)<br>3.    Violations of the UCL's Unlawful Prong, Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br>4.    Violations of the UCL's Unfair Prong, Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br>5.    Ohio Negligence<br>6.    Ohio Strict Liability-Design Defect (Risk-Benefit Test)<br>7.    Ohio Intrusion upon Seclusion |

1

## **INTRODUCTION**[1]

1.    Apple must be held accountable for its continuing failure to adequately protect members of the public from being stalked with its AirTag.

2.    In 2021, Apple released this product knowing full well that it could—and *would*—be purchased and used by abusive, dangerous individuals, to track, coerce, control, and otherwise endanger and abuse innocent victims.

3.    And, in 2021, Apple *also* knew that adequate safeguards had not yet been implemented.  Nonetheless, the AirTag was made available to the public. Since that time, Apple has played—and continues to play—catch up, quietly introducing new features that attempt to curtail the dangers of a product that is now five years old.

4.    But Apple concedes that **even today** AirTags remain a profound risk to people like Plaintiff.

5.    In response to an April 2, 2024 report aired in the United Kingdom on ITV News, titled ***AirTags becoming 'weapon of choice of stalkers' as GPS tracker cases rocket by 317%***,[2] Apple made the following statement: ***"We have identified even more ways we can update Airtag safety warnings and help guard against further unwanted tracking"***



AirTags becoming 'weapon of choice of stalkers' as GPS tracker cases rocket by 317% | ITV News

Fig. 1 (April 2, 2024)

[1] Plaintiff's claims were originally filed as part of *Hughes, et al. v. Apple, Inc.*, Case No. 3:22-cv-07668-VC (N.D. Cal.) but were severed from that action following denial of Plaintiffs' motion for class certification on April 3, 2026 by the Honorable Vince Chhabria along with the claims of approximately 34 other plaintiffs. (Dkt. 305.)

[2] Available at https://www.youtube.com/watch?v=TBhYdgt1FhE

COMPLAINT

6. This promise of future, unspecified action comes far too late. Indeed, it is meaningless for Plaintiff, who already has been harmed in life-altering ways by Apple's recklessness. The time for ensuring adequate safety warnings and better ways to guard against unwanted tracking was years ago, in April 2021, prior to the release of the AirTag. It is unconscionable for Apple to allow a product to remain on the market that is *still* knows to be unsafe.

7. Indeed, Apple has always known that any safeguards it purported to build into AirTags would only, in Apple's own words "deter as opposed to prevent malicious use."

8. Each year, an estimated 13.5 million people are victims of stalking in the United States, with nearly one in three women and one in six men experiencing stalking at some point in their lifetime.[3]

9. Apple's AirTags have become a critical—and shameful—part of this ecosystem. From April 20th, 2021, to April 5th, 2024, Apple received over 40,000 stalking reports, over 1,000 complaints per month on average.

10. Stalking can manifest in a host of ways, most often through unwanted and repeated behaviors such as phone calls, texts, visits, gifts, internet posts, or any other series of acts that would cause fear in a reasonable person. Regardless of the acts the stalker employs, the common theme of stalking behavior is the fear elicited in the victim.

11. This fear undermines and erodes a victim's autonomy and drastically disrupts their day-to-day life. One in eight employed stalking victims miss time from work because of their victimization and more than half lose more than five days of work.[4] One in seven stalking victims move as a result of their victimization.[5] Unsurprisingly, stalking victims suffer much

---

[3] Stalking Prevention Awareness and Resource Center (SPARC), Stalking Fact Sheet (available at https://www.stalkingawareness.org/wp-content/uploads/2019/01/SPARC_StalkngFactSheet_2018_FINAL.pdf)

[4] Baum, K., Catalano, S., & Rand, M. (2009). Stalking Victimization in the United States. Washington, DC: Bureau of Justice Statistics

[5] *Id.*

higher rates of depression, anxiety, insomnia, and social dysfunction than people in the general population.[6]

12.    Technology has increased the tools available to a stalker, with burner phones or call blocking software providing anonymity, and free email services and social media platforms providing a limitless vector for harassing electronic messages and posts.

13.    One of the most dangerous and frightening technologies employed by stalkers is the use of real-time location information to track victims.   These technologies allow stalkers to follow their victims' movements in real time and to undo any attempt on the part of the victim to evade or hide from the stalker.  If one's location is constantly being transmitted to an abuser, there is no place to run.

14.    One of the products that has revolutionized the scope, breadth, and ease of location-based stalking is the Apple AirTag.  Introduced in April 2021, this device is roughly the size of a quarter, and its sole purpose is to transmit its location to its owner.

15.    What separates the AirTag from any competitor product is its unparalleled accuracy, ease of use (it fits seamlessly into Apple's existing suite of products), and affordability.  With a price point of just $29, it has become the weapon of choice of stalkers and abusers.

16.    The AirTag works by emitting signals that are detected by Bluetooth sensors on the hundreds of millions of Apple products across the United States.  These sensors comprise Apple's "FindMy" network.  When a device on the network detects a signal from the missing device, it reports that missing device's location back to Apple, which in turn reports it to the owner.

17.    The ubiquity of Apple products, and their constituency in the FindMy network, means that an AirTag can more reliably transmit location data than any competitor.  Indeed, in all metropolitan areas, and even many rural areas, one is never more than 100 yards away from

[6] Blaauw, E., Arensman, E., Winkel, F.W., Freeve, A., & Sheridan, L. (2002). The Toll of Stalking. Journal of Interpersonal Violence 17(1): 50-63

an Apple device.  Thus, one is never more than 100 yards away from having location data transmitted back to Apple.

18.    None of this came as a surprise to Apple.  Prior to and upon the AirTag's release, advocates and technologists urged the company to rethink the product and to consider its inevitable use in stalking.  In response, Apple heedlessly forged ahead, dismissing concerns and pointing to mitigation features that it claimed rendered the devices "stalker proof."

19.    But Apple's internal emails acknowledge that the company "should have consulted domestic abuse organizations on the unwanted tracking policy before shipping, and from these organizations' point of view, this is not a rare event."

20.    The concerns of these organizations—whom Apple did not consult—were well founded. Immediately after the AirTag's release, and consistently since, reports have proliferated of people finding AirTags placed in their purses, in or on their cars, and even sewn into the lining of their clothes, by stalkers in order to track their whereabouts.  As noted above, Apple, itself, received *over 1,000 reports per month* from victims over a three-year period.

21.    The consequences have been as severe as possible: multiple murders have occurred in which the murderer used an AirTag to track the victim.  Similarly, individuals have been murdered—or murdered others—when using AirTags to track down stolen property and confront the thieves.

22.    Its "stalker proof" protections exposed as totally inadequate, Apple has spent the last five years scrambling to address its failures in protecting people from unwanted, dangerous tracking.  To date, most if not all, of these failures persist, and Apple continues to find itself in the position of *reacting* to the harms its product has unleashed, as opposed to prophylactically preventing those harms.  As one commentator observed: "*You wouldn't allow a car to come to mass-market without having vigorous testing, so why are we allowing smart tech to just be released and then fixing safety features later?*"[7]

---

[7] Ellie Fry, *Inside chilling rise of AirTag stalking as Apple device is branded 'gift to abusers'*, The Mirror (Apr. 24, 2023) (available at https://www.mirror.co.uk/tech/inside-chilling-rise-airtag-stalking-29746435)

COMPLAINT

23. The effects are devastating. Finding a mysterious homing beacon hidden in your personal effects or your car is a terrifying experience. It forces an undeniable reckoning with the fact that someone—perhaps someone you know, perhaps not—is aware of your every move.

24. And this fear necessarily leads to another: what will happen if one's stalker acts on this new information, showing up unannounced and unwanted with ill intent? What are the possible outcomes of being tracked without your knowledge or consent? The outcomes can be devastating.

25. Apple's acts and practices, as detailed further herein, amount to acts of California negligence, California strict product liability, and violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), Ohio negligence law, Ohio strict product liability law, and Ohio intrusion law. Plaintiff seeks injunctive and declaratory relief against Apple, correcting Apple's practice of releasing an unreasonably dangerous product into the stream of commerce, misrepresenting the harms associated therewith, and facilitating the unwanted and unconsented to location tracking. Plaintiff also seeks damages.

## PARTIES

26. Plaintiff Tonya Harris is a resident of Ohio.

27. Defendant Apple, Inc. ("Apple") is an American multinational technology company headquartered in Cupertino, California. Among Apple's flagship items of consumer electronics is the AirTag, and Apple generally oversees all aspects of this device, including but not limited to its design, manufacture, marketing, and technical support and maintenance.

## JURISDICTION AND VENUE

28. This Court has subject matter pursuant to 28 U.S.C. § 1332(a). Plaintiff and Defendant are citizens of different States, and the amount in controversy is over $75,000.

29. This Court has personal jurisdiction over Defendant because its worldwide headquarters are in California, and because it conducts in California substantial business from which the claims in this case arise.

30.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1) because Apple is headquartered in this district and a substantial part of the events or omissions which give rise to the claims alleged herein occurred in in this district.

## CHOICE OF LAW

### A.  California Law Governs Plaintiff's Claims.

31.     Under California's choice-of-law rules, "[w]hether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1040 (N.D. Cal. 2014).

32.     The claims here—asserted on behalf of out-of-state Plaintiff whose claims are not otherwise governed by Apple's choice-of-law provision, discussed *supra*—meet this "sufficiently significant contacts" test, given Apple's myriad contacts with the State of California, which include, *inter alia*, the following:

    a.  Apple is headquartered in California;

    b.  At all times relevant to this litigation, Apple has conducted a significant portion of its business in California;

    c.  Apple's decision to create the AirTag and to release the product into the stream of commerce emanated from California;

    d.  Apple designed the AirTag in California (going so far as to admit this fact with the statement "Designed by Apple in California" etched into the product, itself);

    e.  The principal designers of the AirTag are located in California[8];

    f.  Apple's press and marketing relating to the AirTag was conceived, and emanates from, California[9]; and

---

[8] The product's lead designers are Frank de Jong; Arian Behzadi, Christine Franco, Corey Wang, Marcel van Os and Nicole Ryan. *See* https://appleinsider.com/articles/21/09/04/apple-presents-airtag-designers-with-custom-display-case-sends-close-your-rings-challenge-rewards.  A search of LinkedIn profiles and/or a Google search of the designer's name plus "Apple" reveals that each of these individuals works out of California.

COMPLAINT

g. The functionality of AirTag, itself, was designed by Apple employees in California[10].

33. Because of the contacts that Apple, generally, and AirTags, specifically, have with California, there are sufficient significant contacts with California to allow non-Californian residents (including Plaintiff)—who do not otherwise have privity of contract with Apple and the choice-of-law provision in its iOS terms—to bring their claims under California law.

## FACTUAL ALLEGATIONS

### A. Apple AirTags, Generally

34. The AirTag was introduced in April 2021 as a standalone product. Roughly the size of a US quarter, it is a tracking beacon, meant to help consumers locate other objects, such as keys or purses.[11]

Fig. 2

---

[9] For example, Apple's April 20, 2021 press release titled "Apple introduces AirTag" begins as follows: "**CUPERTINO, CALIFORNIA** – Apple today introduced AirTag, a small and elegantly designed accessory that helps keep track of and find the items that matter most with Apple's Find My app."

[10] Beyond the principal designers listed in footnote 8, *supra*, the video launch of the AirTag on April 20, 2021 (available at https://www.youtube.com/watch?v=JdBYVNuky1M&t=400s) was announced by Carolyn Wolfman-Estrada, an Engineering Program Manager at Apple, located in San Diego. Ms. Wolfman-Estrada posted the announcement video on her LinkedIn profile, calling the product "as rewarding to work on as it was challenging, and one where I felt myself grow as a leader," and stating that she was "[e]ven prouder to represent the amazing AirTag team and Latinas in engineering!" *See,* https://www.linkedin.com/posts/cwolfmanestrada_airtags-appleevent-latinas-activity-6791109566999482368-VlsT/?trk=public_profile_like_view.

[11] Apple, "*Apple introduces AirTag*" Press Release (Apr. 20, 2021) (available at https://www.apple.com/newsroom/2021/04/apple-introduces-airtag/).

COMPLAINT



Fig. 3

35.    AirTags are not themselves connected to the Internet.  Instead, they utilize Bluetooth technology, emitting Bluetooth signals to any Apple device that is nearby.  In turn, those Apple devices report where an AirTag has last been seen.[12] Once an AirTag is identified as being near an Apple device or multiple Apple devices, the devices act as crowdsourced beacons, pinging with the AirTag to locate it for the AirTag's owner.  The owner sees the AirTag on a map, and as they get closer to the AirTag, the owner switches interfaces and is directed with an arrow, sending them right to the AirTag. *E.g.*



Fig. 4

36.    Bluetooth range is approximately 30 feet.  Thus, for an AirTag to be identified by an Apple device, it must come within 30 feet of that device, at which time, the AirTag will have

---

[12] Ryan Mac and Kashmir Hill, "*Are Apple AirTags Being Used to Track People and Steal Cars?*" New York Times (Dec. 30, 2021) (available at https://www.nytimes.com/2021/12/30/technology/apple-airtags-tracking-stalking.html)

COMPLAINT

been located on Apple's network of iPhones, iPads, iPods, etc. that are owned and used by consumers in the United States.[13] This network is vast: as of 2017, 64% of Americans owned an Apple product.[14]

37. Because of this technology and because of the ubiquity of Apple products, it is virtually impossible to hide from an AirTag in most, if not all, populated areas. As one commentator challenged his readers: "try getting through the day without coming within 30 feet of an iPhone or iPad."[15]

38. Eva Galperin, the director of cybersecurity at the Electronic Frontier Foundation, points out that this ubiquity of Apple products makes AirTags "uniquely harmful," explaining "Apple automatically turned every iOS device into part of the network that AirTags use to report the location of an AirTag….The network that Apple has access to is larger and more powerful than that used by the other trackers. It's more powerful for tracking and more dangerous for stalking."[16]

**B. Within Days of the Release of the AirTag, Technologists and Advocates Urged Apple to Consider the Risk Inherent in the Product**

39. Immediately after Apple announced the release of the AirTag, prominent voices in the tech and domestic violence advocacy spaces began warning Apple of the risks inherent in its new product.

40. Within roughly a week of the product's announcement, representatives from the National Network to End Domestic Violence spoke out about the serious harms that AirTags pose. Erica Olsen, the Safety Net Project Director at NNEDV, explained: "When somebody tries

---

[13] Albert Fox Cahn, "*Apple's AirTags Are A Gift to Stalkers*," Wired (May 13, 2021) (available at https://www.wired.com/story/opinion-apples-air-tags-are-a-gift-to-stalkers/)

[14] Steve Leisman, "*America loves its Apple. Poll finds that the average household owns more than two Apple products*" CNBC (Oct. 10, 2017) (available at https://www.cnbc.com/2017/10/09/the-average-american-household-owns-more-than-two-apple-products.html)

[15] "*Apple's AirTags Are A Gift to Stalkers*," note 13, *supra*.

[16] "*Are Apple AirTags Being Used to Track People and Steal Cars?*" note 12, *supra*.

to leave an abusive person, or they are planning to leave, that can be one of the most dangerous times that stalking and assault can escalate. So it's extremely important if people are planning to leave an abusive person, they're able to do so without the person tracking them down and finding them. It's definitely a concern that people will be using any type of [tracking] product they can."[17]

41.    Corbin Streett, a Technology Safety Specialist at NNEDV, elaborated further that individuals being abused by domestic partners were particularly susceptible to being victimized by AirTags: "[Apple] is thinking about the threat model where it's a stalker who is walking by someone on the street they don't know—that stranger danger model—but what about when it is the person you come home to every day?...[H]ow do you build it in a way that those folks who are in relationships, so that this can't be used against them? I hope Apple keeps their learning hat on and works to figure out that piece of the puzzle."[18]

42.    As another example, on May 5, 2021, Geoffrey Fowler, the prominent tech reporter for the Washington Post, published a story titled *Apple's AirTag trackers made it frighteningly easy to 'stalk' me in a test—Apple knows its tiny new lost-item gadgets could empower domestic abuse but doesn't do enough to stop it,*" in which he cautioned:

> Along with helping you find lost items, AirTags are a new means of inexpensive, effective stalking. I know because I tested AirTags by letting a Washington Post colleague pretend to stalk me. And Apple's efforts to stop the misuse of its trackers just aren't sufficient.
>
> …
>
> AirTags show how even Apple, a company known for emphasizing security and privacy, can struggle to understand all the risks involved in creating tech that puts everyday things online.
>
> …

[17] Mark Wilson, "*Apple AirTags could enable domestic abuse in terrifying ways,*" Fast Company (Apr. 29, 2021) (available at https://www.fastcompany.com/90630404/apple-airtags-could-enable-domestic-abuse-in-terrifying-ways)

[18] *Id.*

For most people, AirTags will be a useful convenience that offers precise tracking and a replaceable battery. So why focus on these problems? Because personal tech is no longer just about you. My job as a consumer advocate is to consider the people technology helps — and those it hurts…. Digital stalking is remarkably common, experts say, and it's strongly linked to physical abuse, including murder.[19]

43.    Eva Galperin expressed her concerns even before the product's launch: "I was concerned ahead of their release as soon as I figured out how they worked. I was concerned very shortly after they were released when I started seeing reports of stalking and being contacted by people who were being stalked using these devices."   While acknowledging that Apple subsequently engaged in mitigation efforts—*see*, Section E, *infra*—Galperin went on to state that "[t]he mitigations that Apple had in place at the time that the AirTag came out were woefully insufficient," and "the fact that they chose to bring the product to market in the state that it was in last year, is shameful."[20]

44.    More recently, an advocate for the Cyber Helpline—a UK-based advocacy network for victims of online abuse—decried Apple's *post-hoc* safety measures as follows: "*You wouldn't allow a car to come to mass-market without having vigorous testing, so why are we allowing smart tech to just be released and then fixing safety features later?*"[21]

45.    Wired released a story on the issue in a May 13, 2021 titled "Apple's AirTags Are a Gift to Stalkers," in which the author, Albert Fox Cahn, warned:

Apple needs to take domestic abuse and stalking seriously. More than 10 million Americans have likely faced stalking in their lifetimes, with more than a million facing this threat every

---

[19] Geoffrey Fowler, "*Apple's AirTag trackers made it frighteningly easy to 'stalk' me in a test—Apple knows its tiny new lost-item gadgets could empower domestic abuse but doesn't do enough to stop it*," Washington Post (May 5, 2021) (available at https://www.washingtonpost.com/technology/2021/05/05/apple-airtags-stalking/)

[20] Michael Levitt, "*AirTags are being used to track people and cars. Here's what is being done about it*" NPR (Feb. 18, 2022) (available at https://www.npr.org/2022/02/18/1080944193/apple-airtags-theft-stalking-privacy-tech).

[21] Ellie Fry, *Inside chilling rise of AirTag stalking as Apple device is branded 'gift to abusers'*, The Mirror (Apr. 24, 2023) (available at https://www.mirror.co.uk/tech/inside-chilling-rise-airtag-stalking-29746435)

COMPLAINT

year. The rates for intimate partner violence is even starker, with more than a quarter of women and 10 percent of men reporting abuse. These are not outliers, this is an epidemic of violence touching nearly every corner of our globe. When Apple fails to protect survivors, the consequences can be fatal. Apple leadership needs to give abuse survivors and experts a central place in its development process, incorporating their feedback from the start. Otherwise, the company will continue to make products that endanger people more than they help.[22]

### C. Apple Affirmatively Sought to Dismiss and Minimize Concerns About the Threats Surrounding AirTags.

46.    Upon the release of AirTags, rather than heed the concerns of outside groups and commentators, Apple proactively sought to minimize and dismiss those concerns, arranging for interviews with high-level executive[23] touting the safety of the product.



Fig. 5 [24]

---

[22] "*Apple's AirTags Are A Gift to Stalkers*," note 13, *supra*.

[23] The principal interviewees appear to be Kaiann Drance, Apple's VP of worldwide iPhone product marketing, and Ron Huang, the Apple's senior director of sensing and connectivity.

[24] José Adorno, "*Apple execs explain how AirTag is 'stalker-proof' and whether you should use it to track pets*," 9to5 Mac (Apr. 22, 2021) (available at https://9to5mac.com/2021/04/22/apple-execs-explain-how-airtag-is-stalker-proof-and-whether-you-should-use-it-to-track-pets/)



Fig. 6 [25]

AirTag is stalker-proof even with Android users

April 22, 2021

Apple unveiled on Tuesday its AirTag smart tracker. Designed to be "privacy-first" and "stalker-proof," two Apple executives shared more info about the AirTag with *Fast Company*.

In the interview, Apple's VP of worldwide iPhone product marketing Kaiann Drance and senior director of sensing and connectivity Ron Huang talked about the smart tracker creation and its benefits.

Fig. 7 [26]

---

[25] Michael Grothaus, "*How Apple designed AirTags to be privacy-first and stalker-proof*," Fast Company (Apr. 22, 2021) (available at https://www.fastcompany.com/90628073/apple-airtag-privacy-security) (interviewing Drance and Huang)

[26] "*AirTag is stalker-proof even with Android users*," Telegraph (Apr. 22, 2021) (available at https://techtelegraph.co.uk/airtag-is-stalker-proof-even-with-android-users/)



Fig. 8 [27]

47. These representations, and others, were part of an intentional, coordinated press campaign on the part of Apple, in which its executives and its publicists actively sought to portray the AirTag as a harmless—indeed "stalker-proof"—product. Thus, not only did Apple fail to adequately disclose the risks associated with the AirTag, it affirmatively *misled* the public and the press as to those risks.

**D.  Following Its Release, Reports Proliferated of People Being Stalked Via AirTags**

48. Within months of the release of AirTags, reports began to abound of people being stalked by the product. A recent article in The Verge explained:

> There's no question that AirTags can be — and have been — abused. Sports Illustrated model Brooks Nader recently reported finding a stranger's AirTag in her coat. One Connecticut man was arrested for placing an AirTag on his ex-girlfriend's car; a Texas man admitted to doing the same to his estranged wife last month.

---

[27] Dave LeClair, "*Apple Says AirTags Are Stalker-Proof, Not For Tracking Kids and Pets*," (Apr. 22, 2021) (available at https://www.makeuseof.com/airtags-stalker-proof-not-kids-pets/)

A *New York Times* reporter successfully used them to track her husband's every move (for a story).[28]

49. A December 2021 New York Times article (different from the one mentioned in The Verge piece above) noted individuals reporting abuse on TikTok, Twitter, and Reddit, stating that "There is growing concern that the devices may be abetting a new form of stalking, which privacy groups predicted could happen when Apple introduced the devices in April."[29]

50. The anecdotal reports are often chilling, as illustrated by one commenter on Reddit who cautioned:

> Check EVERYTHING. I have a friend who had this exact problem, traveling alone, AirTag notifications even though she didn't have one.  She went to the police and they searched everything and found one hidden with extra sticky tape underneath a flap in her backpack.  They told her they've seen these in trafficking circles.  They kept the tag to investigate and gave her stuff back and told her to be extra vigilant[.][30]

51. As December 2022, stalking incidents had been reported in New York,[31] California,[32] Pennsylvania,[33] Mississippi,[34] and even at Disney World,[35] as well as one woman reporting a harrowing experience in Paris following a flight from the US.[36]

---

[28] Monica Chin and Victoria Song "*AirTags Are Dangerous — Here's How Apple Could Fix Them*" The Verge (Mar. 1, 2022) (available at https://www.theverge.com/2022/3/1/22947917/airtags-privacy-security-stalking-solutions)

[29] "*Are Apple AirTags Being Used to Track People and Steal Cars?*" note 12, *supra*.

[30] https://www.reddit.com/r/applehelp/comments/rkfxnr/unsettling_notification_re_detected_airtag_cause/

[31] Sara Boboltz "*AirTags Are A Growing Headache For Apple Amid Disturbing Reports Of Tracking*," Huffington Post (Dec. 2, 2022) (available at https://www.huffingtonpost.co.uk/entry/apple-airtags-tracking_n_61f425ade4b067cbfa1cb2b8)

[32] "*Are Apple AirTags Being Used to Track People and Steal Cars?*" note 12, *supra*.

[33] Zahriah Balentine, "*2 women believe Apple Airtag was used to stalk them after leaving Central Pa. restaurant*," Williamsport Sun-Gazette (Jan. 21, 2022) (available at https://www.sungazette.com/news/2022/01/2-women-believe-apple-airtag-was-used-to-stalk-them-after-leaving-central-pa-restaurant/)

[34] "*AirTags Are A Growing Headache For Apple Amid Disturbing Reports Of Tracking*," note 31, *supra*.

52. Since that time, an explosion of reporting has occurred—in just one metropolitan area (Tulsa, Oklahoma), police have investigated 19 cases involving AirTags, with many ending in violence. In one case, the stalker followed a woman to an Airbnb and punched her. Another report says a man used an AirTag to track his former partner to set her car on fire. And in another case, a woman found her boyfriend's ex and punched her in the face.[37]

53. Moreover, international incidents of stalking have spiked, with reports of malicious AirTag use in, *inter alia*, the United Kingdom[38] and India.[39]

54. Tragically, in multiple instances, AirTag tracking led directly to a murder.

55. In January 2022, an Akron, Ohio woman was stalked by her ex-boyfriend, who buried an AirTag in the back pocket of the passenger seat in her car. The stalker used the AirTag to follow the woman and shoot her.[40]

56. In June of 2022, an Indianapolis woman hid an AirTag in her boyfriend's car, followed him to a bar, and ran him over with her car, killing him at the scene.[41]

---

[35] Caitlyn Shelton, *AirTag tracks family through Disney World,* ABC News 10 (May 3, 2022) (available at https://www.news10.com/news/crime/airtag-tracks-family-through-disney-world/)

[36] Maggie Kim, *I Was Stalked with an Apple AirTag—Here's What I Wish I'd Known*, Reader's Digest (Feb. 11. 2022) (available at https://www.rd.com/article/apple-airtag-stalking/)

[37] Janna Clark, *'That's terrifying,' FOX23 investigates cases of AirTag stalking in Tulsa*, Fox 23 (May 15, 2023) (available at https://www.fox23.com/news/fox23-investigates/thats-terrifying-fox23-investigates-cases-of-airtag-stalking-in-tulsa/article_e7239350-f360-11ed-bf48-17a67258bf06.html)

[38] Ellie Fry, *Inside chilling rise of AirTag stalking as Apple device is branded 'gift to abusers'*, The Mirror (Apr. 24, 2023) (available at https://www.mirror.co.uk/tech/inside-chilling-rise-airtag-stalking-29746435)

[39] Ankita Chakravarti, *Ex-partner uses Apple AirTag to stalk Ahmedabad woman, device found hidden under driver's seat*, India Today (Sep. 5, 2023) (available at https://www.indiatoday.in/technology/news/story/ex-partner-uses-apple-airtag-to-stalk-ahmedabad-woman-device-found-hidden-under-drivers-seat-2430063-2023-09-02)

[40] *Family Believes Akron Mother Was Chased Before Murder*, Ohio News (March 2, 2022) (available at https://darik.news/ohio/family-believes-akron-mother-was-chased-before-murder/532936.html)

COMPLAINT

57. In July of 2023, a woman in Chicago was murdered by her estranged boyfriend after removing an AirTag that he'd secretly placed in her car.[42]

58. AirTag tracking has even led to murder when the AirTag's owner is simply trying to track down stolen property. For example, a Texas man shot and killed a suspected car thief, after following his stolen truck via an AirTag placed within the vehicle.[43] And a woman in California was killed after using an AirTag to track down her stolen car and confront the thieves.[44]

59. All of the above instances—while harrowing—do not come close to exposing the true scope of AirTag stalking. As noted above, from April 20th, 2021 to April 5th, 2024, Apple received over 40,000 stalking reports, over 1,000 complaints per month on average.

**E. Individuals Have Few, If Any, Meaningful Remedies When They Are Tracked**

60. While Apple has built safeguards into the AirTag product, they are woefully inadequate. Indeed, Apple's own internal documents acknowledge that its safeguards would only "deter as opposed to prevent malicious use."

61. Moreover, there long has been a gross imbalance between the protections available to iOS/Apple users, versus those available to individuals with Android devices—historically rendering Android users nearly defenseless to tracking/stalking using an AirTag.

---

[41] Alexis McAdams, *Apple AirTags, meant to help you track your stuff, have become tools of stalkers and criminals*, Fox News (June 14, 2022) (available at https://www.foxnews.com/tech/apple-airtag-stalking-dangerous-crime)

[42] CBS Chicago Team, *Man killed girlfriend after she removed AirTag he'd secretly placed in her car, prosecutors say*, CBS Chicago (July 14, 2023) (available at https://www.cbsnews.com/chicago/news/armoni-henry-charged-murder-jailene-flowers-marianos-evergreen-park/)

[43] Aaron McDade, *A Texas man used an Apple AirTag to track down his stolen truck and shoot and kill the suspected thief, police say*, Business Insider (Mar. 30, 2023) (available at https://www.businessinsider.com/texas-man-airtag-finds-stolen-truck-shoots-kills-suspected-thief-2023-3).

[44] *Woman shot, killed after tracking stolen vehicle with Apple AirTag*, Carolina Coast Online (Jun. 22, 2023) (available at https://www.carolinacoastonline.com/national/article_b0f7e0e2-1142-11ee-8773-fb021ce53b76.html)

**Remedies for iOS Users (and Their Limitations)**

62.     Apple has attempted to mitigate the potential danger of being unwantedly tracked with an AirTag by introducing several features into its operating (iOS) architecture.

63.     **Device-based text notifications:** if an individual has an iPhone, iPad, or iPod Touch with iOS 14.5 or later, their phone is programmed to display an alert if the phone detects an unknown AirTag moving with the device.  The warning in question states: "AirTag Found Moving With You. The location of this AirTag can be seen by the owner."



Fig. 9 [45]

64.     This alert, however, is not immediate.  Originally, Apple's algorithm would wait 72 hours before notifying an individual that they had been in the proximity of an unknown AirTag.  Put another way, a victim could have been stalked for three days before Apple alerted them of the potential danger.[46]  Recently, Apple reduced the time period for the notification, but individuals still report not receiving an alert after as much as a day of being tracked— "[a]ccording to Apple, the timing of the alerts can vary depending on the iPhone's operating system and location settings,"[47] but users have no control over this.  As a report by an industry

---

[45] https://support.apple.com/en-us/HT212227

[46] "*AirTags Are Dangerous — Here's How Apple Could Fix Them,*" note 28, *supra*.

[47] "*Are Apple AirTags Being Used to Track People and Steal Cars?*" note 12, *supra*.

expert noted, "Apple estimates it takes between four and eight hours to send an alert, which could be a potentially fatal span of time."[48]

65.    Further, the notification only gets sent to individuals who have (1) iPhones, iPads, or iPod Touches that (2) run iOS version 14.5 or later.  This means that the notifications do *not* appear for owners of older iPhones running older software.[49]

66.    Most critically, these alerts can only be triggered by Apple's algorithms.  An individual with an iPhone cannot trigger a scan independently.  This means that a stalked individual is at the mercy of Apple's operating system to determine whether or not an AirTag is moving with her.  And, just because an alert has been shown once, it does not follow that the alert will show up again, meaning that a stalked individual may have lost her chance to identify or locate the AirTag if she does not move fast enough.

**Remedies for Android Users (and Their Limitations)**

67.    While an iPhone owner might get a timely alert that then makes them aware of the potential danger of being tracked by an AirTag, users of Android phones and devices historically have not had that protection, as their devices run on the Android operating system, which is outside of the control of Apple.  For two years following the release of AirTags, Apple did not work in conjunction with Google to provide automated alerts when Android users are being stalked.  Instead, only in May 2023 did the two companies announce that they would collaborate

---

[48] Michael Simon, "*Apple has an AirTag Problem—here's how to solve it.*" Macworld (Jan. 21, 2022) (available at https://www.macworld.com/article/606934/apple-airtag-problem-notifications-android-sound.html)

[49] The notification also purportedly enables the iPhone, iPad, or iPod Touch user to have the AirTag emit a beep so that it can be located.  As discussed *infra*, the sound the AirTag emits is hard to hear and easily confused with other gadgets.  More importantly, however, this feature appears not to work reliably.  One reporter who tested it stated: "The AirTag was literally inches away from [the test] phone, but it wouldn't connect. We tried multiple times. Nada. The same thing happened to me when I was trying to find which pocket of my bag my husband had stashed his AirTag in. My phone was in my hand. My bag was in my other hand. Nothing. This is obviously an issue, as it's hard to get rid of an unknown AirTag if you can't find it. Another problem is that sound alerts may not be helpful if a victim is trying to find the tracker discreetly without tipping off their abuser." *See,* "*AirTags Are Dangerous — Here's How Apple Could Fix Them,*" note 28, *supra*.

on providing anti-stalking measures across platforms.  And only within the last few months were those protections being rolled out for Android users (after the instant lawsuit was filed).

68.    Thus, for at least two-and-a-half years, individuals who did not own iPhones, iPads, or iPod Touches have been much more vulnerable to being tracked using an AirTag. Android mobile devices have a 41.9% market share in the United States,[50] meaning that almost half of America's population would not receive any notification if they were being stalked by an AirTag.

69.    In late 2022, Apple released an app ("Tracker Detect") for Android devices, but it was inadequate for multiple reasons.

70.    *First*, the Android device owner would have to be alerted to, or suspect, the potential of AirTag stalking in the first instance, and would then have to search the Google App Store to find Apple's app.  Apple has not taken meaningful steps to alert Android users of the threat posed by AirTags, and to date, Tracker Detect has only (roughly) one million downloads, worldwide.[51]  Thus, virtually every Android phone user would be oblivious to being tracked by an AirTag.

71.    *Second*, the app itself has been described as an example of Apple "fulfilling its obligations *to the least extent possible*."[52]

> The Android app is little more than a button to scan the surrounding area for any nearby trackers. It doesn't perform background scanning or issue push notifications, and it certainly doesn't let Android users track items on the Find My network or set up Find My compatible devices.[53]

72.    This limitation is critical and, potentially, deadly: unlike the "always-on" scan that Apple provides for iPhone, iPad, or iPod Touch owners (meaning that these devices constantly conduct background scans for unwanted AirTags), an Android had to selectively, and

---

[50] https://gs.statcounter.com/os-market-share/mobile/united-states-of-america

[51] https://play.google.com/store/apps/details?id=com.apple.trackerdetect&hl=en_US&gl=US

[52] *"Apple has an AirTag Problem—here's how to solve it,"* note 48, *supra*.

[53] *Id*.

COMPLAINT

intentionally, engage Tracker Detect to conduct a scan.  Once that scan concludes, the app will not scan for AirTags again until the Android device owner once more engages the app.  Put another way, any Android owner who downloads Tracker Detect must decide when and where to scan for AirTags—something a person being unknowingly tracked would be unlikely to do.

73.     Nor is this technology particularly helpful in densely populated areas, where myriad AirTags are likely to be present. Downloading Tracker Detect was fruitless for determining whether a specific AirTag was in the vicinity. All it could tell was that AirTags, in general, were nearby.

74.     In May 2023, Google and Apple submitted a proposed industry specification to help address the disconnect between the (deficient) warnings that iOS users would receive and the (all-but-nonexistent) warnings that Android users would receive in the event of being stalked by an AirTag.  Per a Google press release, the proposed specification "will allow Bluetooth location-tracking devices to be compatible with unauthorized tracking detection and alerts across Android and iOS platforms."[54]

75.     Subsequently, at the end of July 2023, Google announced that devices running Android 6.0+ would begin receiving automatic alerts for unknown trackers—specifically, for AirTags tracking Android users.[55]  Assuming this roll out occurs successfully, this presumably brings Android users up to parity with Apple users in terms of operating-system-level security, but does so roughly two-and-a-half years *after* the introduction of AirTags to the marketplace, and underscores the failures on Apple's part with regard to Android users up until late summer 2023.

[54] Google Security Blog, *Google and Apple lead initiative for an industry specification to address unwanted tracking*, (May 2, 2023) (available at https://security.googleblog.com/2023/05/google-and-apple-lead-initiative-for.html)

[55] Google Blog, *3 ways unknown tracker alerts on Android help keep you safe*, (Jul. 27, 2023) (available at https://blog.google/products/android/unknown-tracker-alert-google-android/)

76.    Further, as the EFF has noted, Apple's commitments to this new specification are undergirded by a separate profit motive: the company has listed several patent disclosures that it claims apply to the new specification.[56]  Per the EFF:

> That's a way of notifying competitors, and the public, that Apple believes it owns patents that cover the use of this technology. That means Apple could, in the future, choose to charge patent royalties to anyone using this technology, or file a patent infringement lawsuit against them.
>
> The decision to assert patents over this specification is unnecessary and unfortunate. The public will suffer a significant loss if Apple asserts that it has patent rights to what should be an open, free repository of information meant to help companies and everyday people prevent stalking and malicious tracking.  Apple could threaten or sue people who use agreed-upon technology to prevent unwanted tracking.
>
> Apple stands alone in its insistence that it may use intellectual property rights to threaten people with patent lawsuits, or demand fees, for using privacy-protecting technology. The IETF convening included Samsung, Google, Mozilla, and many other patent-owning entities, all of whom chose not to engage in this type of threatening behavior.
>
> Apple's decision to bring patent rights into this conversation is disappointing. The company should withdraw its patent disclosures and make a public statement that it won't make intellectual property claims against companies or users who don't want to be surreptitiously tracked.
>
> The technology required for Detecting Unwanted Location Trackers can, and should, be free to all.[57]

77.    Apple's conduct thus disincentivizes other stakeholders from using this new specification to protect Android users from being stalked, and undermines the very efforts it claims are necessary to keep people safe.

---

[56] Alexis Hancock and Eva Galperin, *The Industry Discussion About Standards For Bluetooth-Enabled Physical Trackers Is Finally Getting Started*, EFF.org (Aug. 14, 2023) (available at https://www.eff.org/deeplinks/2023/08/industry-discussion-about-standards-bluetooth-enabled-physical-trackers-finally)

[57] *Id*.

78.    Most frustrating of all, Apple did not have to wait for Google to provide an Android app that scanned for AirTags in the background.  As early as March 2022, Google noted that *it already was possible for Apple's app to run in the background*.

> "Domestic violence advocacy groups have raised valid concerns about these products, and we encourage the manufacturers [*i.e.,* Apple] to update their apps to improve proactive scanning," said spokeswoman Kaori Miyake.[58]

79.    Rather than fix this glaring infirmity immediately, Apple spokesman Alex Kirschner responded as follows:

> "We're committed to making improvements that continue to guard against unwanted tracking, and we are evaluating ways to make unwanted tracking features stronger for Android users. *Continuous background scanning with Tracker Detect on Android would negatively impact battery life and other features that use Bluetooth*. The most power-efficient way to enable this type of background scanning for AirTag is to implement it at the Android operating system level."[59]

80.    Apple prioritizing battery life—or its patent rights—over safety is unconscionable.  As is its insistence that Google bears responsibility to implement background scanning *for an Apple product* that was dangerously rushed to market.  Apple could have made its product safer for all individuals, yet it chose not to, and allowed two and a half years to elapse until its competitor bridged the gap.  Apple has shifted the burden of safety onto its rivals, with the added caveat that it may force them to pay—in the future—for this privilege.

**Remedies That Do Not Rely on a
Specific Operating System (and Their Limitations)**

81.    **Sound notifications:** if an unknown AirTag is away from its owner for a long time—Apple does not specify precisely how long but says between eight and 24 hours—Apple states that the AirTag will play a chime-like sound so that it can be found.

---

[58] Geoffrey A. Fowler, *Am I being tracked? Anti-stalking tech from Apple, Tile falls short.*, Washington Post (Mar. 31, 2022) (available at https://www.washingtonpost.com/technology/2022/03/31/airtags-stalking/)

[59] *Id.*

COMPLAINT

82. However, the alert sound is roughly 60 decibels, which is approximately as loud as a normal conversation between two people, or background music.

83. Moreover, the sound is not particularly distinctive, meaning that it can be mistaken for other, benign and ambient noises coming from other devices. As one reporter who tested the security feature noted: "the sound was easy to confuse with all the other beeps and boops gadgets make these days. It also stopped playing long before [the tester] was able to find it."[60] Ultimately, "[w]hether you hear the AirTag chime feels like a crapshoot."[61]

84. This is particularly problematic if the victim is hearing impaired or in a loud environment, or if the stalker places the AirTag in a place where it will be muffled or out of range of hearing (like the outside of a car). As one commentator noted, "If [an AirTag is] behind your license plate and you're driving, you're never going to hear that."[62]

85. As one other reporter wrote, "Many stalking victims in AirTag cases have complained that when they received the warning that an AirTag was traveling with them, they were unable to find it after searching. This left them feeling exposed and vulnerable, as they weren't sure if the AirTag was still nearby."[63]

86. Worse, still, people have figured out how to disable the speaker on AirTags, and are selling modified "silent AirTags" on mainstream e-commerce sites like eBay and Etsy.[64] Per similar reporting, "tutorials that illustrate how to deactivate or completely remove the AirTag's

---

[60] "*AirTags Are Dangerous — Here's How Apple Could Fix Them,*" note 28, *supra*.

[61] *Id.*

[62] *Id.*

[63] Sarah Perez, "*Apple to Address AirTag Stalking Problems With Upcoming Features,*" TechCrunch (Feb. 10, 2022)" (available at https://techcrunch.com/2022/02/10/apple-to-address-airtag-stalking-problem-with-upcoming-features/#:~:text=Many%20stalking%20victims%20in%20AirTag,the%20AirTag%20was%20still%20nearby.)

[64] Hartley Charlton, "*Sale of 'Silent AirTags' on eBay and Etsy Raises Privacy Concerns,*" MacRumors (Feb. 3, 2022) (available at https://www.macrumors.com/2022/02/03/silent-airtags-privacy-concerns/#:~:text=The%20modified%20AirTags%2C%20dubbed%20%22Silent,battery%20to%20disconnect%20the%20speaker)

speaker are readily available online. There are no software updates that Apple can release that will make a physically modified AirTag start to make noise again, and the other included safety features are still dependent on victims not only having an up-to-date smartphone but also being technically savvy enough to download and use the necessary apps to find rogue AirTags nearby. *The risks involved with a product like this being abused still seem like they far outweigh the convenience of finding a misplaced set of keys*."[65]

87.     Further, in the event an individual finds the AirTag, they must still figure out what to do with it.  AirTags can be deactivated by removing the battery. Doing so not only stops it from updating its current location but also alerts the device's owner. However, law enforcement agencies have pointed out that removing the AirTag's battery could potentially contaminate it as evidence.[66]

88.     Other options to deal with a found AirTag can be equally fraught: "If the offender is monitoring the victim's actions and sees that the AirTag has now gone to [somewhere like a] police station, that can escalate the situation and put a victim more in danger," cautions Jennifer Landhuis, the director of the Stalking Prevention Awareness and Resource Center.[67]

89.     A summary of the deficiencies of the various safety features is set forth in the following chart:

| Safety Feature | Operating System | Deficiency |
|---|---|---|
| Unknown AirTag Screen Alerts | iOS | • **Alert is not immediate**.  Originally, the alert would not be triggered until 72 hours.  Presently, the time has been shortened to between 4 and 8 hours, but this is still too dangerous a wait time.<br>• **Can be disabled inadvertently**.  iPhone owners |

---

[65] Andrew Liszewski, "*Silenced AirTags With Disabled Speakers Are Popping Up for Sale Online*," Gizmodo (Feb. 3, 2022) (available at https://gizmodo.com/silenced-airtags-with-disabled-speakers-for-sale-online-1848473673)

[66] "*AirTags are being used to track people and cars. Here's what is being done about it*," note 20, *supra*.

[67] "*AirTags are being used to track people and cars. Here's what is being done about it*," note 20, *supra*.

| | | |
|---|---|---|
| | | who disable "Location Services" in their phone settings (which is often done for separate, privacy-related reasons) will also be unable to receive Unknown AirTag Alerts, but this consequence is not explained to users.<br>• **Cannot be triggered independently**. A common problem is that Apple's alert cannot be triggered by the tracked individual. Instead, it pops up at random. Thus, the tracked individual often cannot rely on Apple's alerts if she wishes to seek further help. Or at least, she only may do so if the alert randomly pops up again, in the presence of the person from whom the tracked individual is seeking help (law enforcement; mechanic; friend; etc.).<br>• **Reliability**. The iOS AirTag detection software has reported problems regarding (1) consistency and (2) accuracy. |
| Sound Alerts | iOS and Android | • **Alert is not immediate**. *See supra.*<br>• **Cannot be triggered independently**. *See supra.*<br>• **Volume is insufficient**. The AirTag alert volume is, at maximum, 60 decibels. This is not loud enough to ensure that an individual is alerted, particularly if the AirTag is muffled due to being placed on the outside of an individual's car, within a purse, wrapped in a noise-cancelling fabric, etc.<br>• **Sound is not distinct.** The AirTag chime is indistinguishable from the myriad other sound alerts that people's phones, computers, smartwatches, and the like emit on a constant basis. Nothing about the AirTag chime alerts individuals to the significance of its purpose and context. Many individuals where not aware of the significance of the AirTag sound alert upon hearing it.<br>• **Duration**. The AirTag beep is not continuous and will stop before a targeted person can locate the AirTag.<br>• **Can be disabled with ease**. As noted above, the AirTag remains functional even when the speaker has been disabled, which fact has been cognized by many would-be abusers, who have posted online tutorials on how to disable AirTag speakers for more effective stalking. |
| Disabling AirTags | iOS and | • **Physical possession of the AirTag is required**. |

27

COMPLAINT

| | | |
|---|---|---|
| | Android | If an individual wishes to disable an AirTag that is being used to stalk her, she must do so manually.  This means that she needs to (1) find the AirTag, and (2) pop off the cover to remove the battery.[68]  However, finding the AirTag is not always possible; or else it might require significant cost – for example, multiple people have been told by mechanics that their whole car would have to be stripped to look for the AirTag (a considerable cost).  Further, physically dismantling the AirTag necessarily compromises evidence that would later needed in any law enforcement action. |
| AirTag Identifier Reset | iOS (and potentially Android) | • **Resetting identifiers also resets Apple's unknown tracker search logic.**  Publicly available reporting,[69] indicates that an AirTag's identifier(s) automatically change at regular intervals, in order to be privacy protective of the owners.  The problem, however, is that when those identifiers re-set, it appears to thwart Apple's "tracking alert logic."[70] |
| AirTag Firmware Updates | iOS (and potentially Android) | • **Relies on AirTag owners (i.e., stalkers) to implement.**  Many of Apple's attempts to retroactively improve AirTag safety occur via updates of AirTag firmware. For example, firmware update 2.0.24 enabled a feature wherein iPhone owners who are being tracked could use a precision finding feature to locate an unwanted AirTag.[71]  But such firmware updates do not happen automatically, or "over the air."  Instead, they require the AirTag owners to implement the updates.  In the stalking context, this means that these safety updates must be implemented by the very people who the updates are meant to thwart. |

[68] https://support.apple.com/en-us/HT212227

[69] https://www.macworld.com/article/345863/how-to-find-block-disable-airtag-moving-with-you.html ("Another reason why you may not be able to find the AirTag is that it may have changed its identifier (which happens regularly). The Bluetooth ID produced by an AirTag, and by all Apple devices that participate in Find My crowdsourcing, changes on a regular basis to avoid becoming a reverse tracking item: if it were persistent, then someone could track your devices based on the "anonymous" Bluetooth ID. That means that your iPhone or iPad has to notice an AirTag moving with it over a relatively short period of time."

[70] *Id.*

[71] https://support.apple.com/en-us/102183

COMPLAINT

| Tracker Detect App | Android | • **Low Awareness**. The Tracker Detect App is not bundled into Android operating systems or suite of apps that come with non-Apple manufacturers. In order to use this safety measure, individuals would have to know about it, in the first place, and then seek it out and download it.<br>• **Does not run in the background.** Unlike Apple's iOS-specific alerts, Tracker Detect is not "always on," meaning that the user must independently trigger the scan. Thus, the app is only as effective as the user's intuition.<br>• **Triggering sound alerts.** The Tracker Detect user must wait 10 minutes before having a "detected" AirTag emit a sound.[72] This is particularly important, as Tracker Detect does not allow for precision finding (i.e., the app does not guide the user towards the AirTag's location). Thus, the only way for a user of Tracker Detect to locate the AirTag is through triggering the sound. |
| --- | --- | --- |

## F. At All Relevant Times, Alternative Feasible Designs Were Available, Which Could Have Made AirTags Safer

90.    Apple's carelessness in designing, marketing, and releasing the AirTag with inadequate protections against stalking and unwanted tracking is magnified by the fact that alternative designs for the AirTag and its accompanying software were available that would have mitigated these risks with no substantial impairments to the AirTag's advertised, legitimate functions.

91.    In fact, Apple knew that several alternative designs and software changes were available, because Apple itself incorporated numerous software changes and design features following the AirTag's release, once it realized that its launch features were inadequate, due to well-publicized reports of AirTags being used for stalking and harassment.

92.    For example, at release, an individual being tracked by an AirTag had to wait 3 days before receiving any alert. Apple later shortened this period to 8-24 hours of continuous tracking.

---

[72] https://thebinaryhick.blog/2022/01/08/androids-airtags-oof/

COMPLAINT

93. Apple could have launched the AirTag alongside an app for Android devices that would have provided alerts to individuals that did not possess iOS devices but were nonetheless vulnerable to unwanted tracking. Apple's post-release development and release of the TrackerDetect app shows that it was aware that leaving Android users vulnerable was a serious defect in the AirTag's safety feature. In fact, even the TrackerDetect app demonstrates a failure on Apple's part and the feasibility of a safer alternative design, given that subsequently, Apple partnered with Google and others to create an industry standard that would enable Android owners to receive alerts on their phones.

94. Additionally, Apple could have designed its unwanted tracking alerts so that dismissed alerts are stored and available for recalled viewing at an alternate time and location by victims. Instead, victims who received an alert and dismissed it, either through accident or confusion, were left with no option to view the alert again or follow the instructions Apple provided once the alert was tapped.

95. Apple could have designed a method whereby victims of unwanted tracking could remotely disable an AirTag in their vicinity once an alert had been received. Instead, victims are required to locate the AirTag and physically remove the device's battery before tracking can be disabled. Individuals that cannot locate the AirTag, or who are concerned about potentially tampering with evidence, have no choice but to accept being tracked.

96. Apple could allow a victim who receives an alert to have a feature where that victim could "mute" their location for a time period, allowing the tracked individual to reach a safe location and identify the AirTag in question.

97. Apple could adjust its notifications so that an alert triggers a victim's location is being viewed by their stalker via an AirTag, rather than after 8 hours of continuous tracking.

98. Apple could adjust the AirTag's tracking features so that moment-by-moment tracking is available only for a limited period of time before being locked. A user that wished to have the feature unlocked would have to call Apple Support and provide a statement that includes their: (a) name; (b) phone number; (c) address; (d) Apple ID; (e) device serial number; and (f) the reason for requesting moment-to-moment tracking. Individuals with a legitimate use

for the AirTag would be unlikely to run into this ceiling, while stalkers would be limited in their ability to track and harass victims without providing potentially incriminating evidence.

99.    Alternatively, Apple could lock moment-to-moment AirTag tracking behind a subscription paywall, requiring a recurring fee and registration information from users who wanted more than occasional location updates. This would have limited the accessibility of AirTags as a tool for stalkers and provided law enforcement with suspect information in the event of stalking and unwanted tracking, while still preserving the device's advertised function.

100.   Additionally, Apple could have designed the AirTag so that any attempts to tamper with its speakers would disable the device's tracking capabilities.

101.   These alternative designs, some of which ultimately were adopted by Apple, show that the AirTag was and remains defectively designed, and Apple's decision to market and release the AirTag indicates a conscious disregard for the privacy and security of individuals like Plaintiff.

### G. Victims of AirTag Stalking Have Little Meaningful Recourse in the Criminal Justice System, and These Victims Are Further Undermined by Apple's Disingenuous Statements About Its Commitments to Working With Law Enforcement.

102.   Even in the event that a victim of AirTag stalking is able to discover the AirTag and bring it to law enforcement, there are very few, meaningful protections that such a victim would then be able to receive.  At present, only 23 states have electronic tracking laws,[73] and stalking, in and of itself, is a crime that often goes unprosecuted:

> Stalking goes unrecognized, uncharged, and unprosecuted for a number of reasons. Victims, police, and prosecutors often fail to recognize patterns of behavior as "stalking," or associate the term exclusively with following, monitoring, or surveillance—acts that represent only one variety of the many types of behavior that may fit the statutory definition of stalking. Police and prosecutors may focus on a specific incident that resulted in a law enforcement response (e.g., an assault, an isolated threat, an act of vandalism) and fail to explore the context within which the act was committed—context that may include a course of conduct

---

[73] Alexis McAdams, "*Apple AirTags, meant to help you track your stuff, have become tools of stalkers and criminals,*" Fox News (June 14, 2022) (available at https://www.foxnews.com/tech/apple-airtag-stalking-dangerous-crime).

chargeable as stalking. Prosecutors, failing to understand the strategic value of a stalking charge, may wonder why they should bother "complicating" their case when they have strong evidence of a crime that is perceived to be more serious and easier to prosecute.[74]

103.    Indeed, the number of individuals who are stalked in the United States is jaw-dropping.  More than 6 million people over the age of 18 are stalked each year in the United States, according to data from the Department of Justice's Bureau of Justice Statistics (BJS).[75] That number is believed to be much higher, however, as BJS statistics indicate just 40% of stalking cases are reported to police.[76]  According to the Stalking Prevention, Awareness, and Resource Center (SPARC), one in six women and one in 17 men are stalking survivors. Roughly 15% of those individuals said the stalking forced them to move.[77]  Yet, once reported to the police, only 8% of stalking perpetrators are arrested.[78]

104.    This fact bears particular emphasis given that one of Apple's principal responses in the wake of the AirTags fallout has been that "[w]e have been actively working with law enforcement on all AirTag-related requests we've received….Apple can provide the paired account details in response to a subpoena or valid request from law enforcement. We have successfully partnered with them on cases where information we provided has been used to trace an AirTag back to the perpetrator, who was then apprehended and charged."[79]  This statement is critically misleading for several reasons.

[74] Stalking Prevention Awareness and Resource Center ("SPARC"). *Prosecutor's Guide to Stalking* (2020) (available at https://www.stalkingawareness.org/wp-content/uploads/2020/01/SPA-19.005-Prosecutors-Guide-to-Stalking-00000002.pdf)

[75] Megan Stone, "*After 9-year fight to prosecute her stalker, woman shares story to help other survivors*," ABC News (Jan. 5, 2021) (available at https://abcnews.go.com/GMA/Living/year-fight-prosecute-stalker-woman-shares-story-survivors/story?id=74878256)

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] Apple, *An update on AirTag and unwanted tracking*, Apple.com (Feb. 10, 2022) (available at https://www.apple.com/newsroom/2022/02/an-update-on-airtag-and-unwanted-tracking/)

105. **First**, as noted above, the number of stalkers who face criminal prosecution is shamefully low. This stems from the fact that stalking behavior is not criminalized in many jurisdictions meaning that no charges *could* be brought. Further, even when the stalking is punishable under state law, police are often disinterested in pursuing the matter further, meaning that no fulsome investigation—let alone an arrest—occurs. Apple seeks to hand its obligations off to law enforcement, but this is a deeply flawed approach, given the uneven patchwork of criminal laws around the country.

106. News reports of AirTag stalking are replete with examples of victims either not filing reports or being rebuffed by police:

- "Kimberly Scroop, from California, says the police refused to take a report when she alerted them to an AirTag tracking her location. She claims officers even went as far to say that nothing illegal had occurred, despite stalking being a crime in the state of Arizona, where she tried to report the incident…. Kimberly went to the police station [after finding the AirTag] to report the device, hoping whoever might be tracking her could see that she was going straight to the authorities. When she showed the officers the screenshots of the map tracking her location, they had 'no idea what an AirTag was'…."They essentially told me, 'We don't know what the technology is, and if you don't know who it is, what do you expect us to do?' but I thought that was their job," she says.…"I explained again, and they wouldn't even let me go past the front desk. They wouldn't write my name down. Nothing."[80]

- "Back in Chicago, the police did take a report of Angelina's case, but she says officers were also unsure what an AirTag was, and didn't know what to file the crime as. Despite her managing to find the device, as well as the AirTag's serial number and partial phone

[80] Ellie Fry, *Inside chilling rise of AirTag stalking as Apple device is branded 'gift to abusers'*, The Mirror (Apr. 24, 2023) (available at https://www.mirror.co.uk/tech/inside-chilling-rise-airtag-stalking-29746435)

number the device was registered to, Angelina says the cops told her there wasn't much they could do, but said a detective would follow up. She hasn't heard from them since."[81]

- "[S]ince Carney did not file a police report, for fear of retribution, she has not been able to find out for sure who is behind the rogue AirTag found in her bag."[82]

107. **Second**, and more importantly, Apple does *not* provide fulsome sets of information in response to law enforcement requests, and instead engages in obfuscatory tactics that prevent disclosure of critical information.

108. It is not entirely clear why Apple would not—as a matter of course—provide identifying information as to the owner of an AirTag in response to a law enforcement subpoena, but the answer may lie in the guidance that Apple provides to law enforcement regarding its response protocols to requests for AirTag information:

> With a serial number, Apple may be able to provide the paired account details in response to a subpoena or greater legal process. *AirTag pairing history is available for a period up to 25 days.*[83]

109. Thus, in reality—and exclusively due to Apple's data retention policies vis-à-vis its product that has a known use-case for stalking—Apple can only provide useful information in a criminal investigation if (1) the AirTag at issue was paired within the past 25 days and (2) the subpoena or other valid request was received within that same window. This also assumes that the victim managed to locate and obtain possession of the AirTag, as the device's serial number is required in order to locate the data in the first place.

110. These limitations are crippling to a criminal investigation, not to mention an effective prosecution. Apple's statements about cooperation with law enforcement are deeply misleading.

---

[81] *Id.*

[82] *AirTag stalking victims unconvinced by Apple fixes*, France 24 (Feb. 15, 2023) (available at https://www.france24.com/en/live-news/20230215-airtag-harassment-victims-unconvinced-by-apple-s-fixes)

[83] Apple, *Legal Process Guidelines* (available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf)

COMPLAINT

111.   As one reporter summarizes: "What all this shows is how such a relatively innocuous piece of technology can have massive unintended consequences, but *Apple's response to the privacy nightmare it's created has been slow and piecemeal. While the company touts that it will give up any information to law enforcement regarding tracking, Apple's strategy puts the onus on regular people to be aware of the technology and actively scan for it on their person.*"[84]

## H. The Federal Trade Commission Makes Clear That Stalking Technologies and Unwanted Location Tracking Violates Section 5 of the FTC Act.

112.   Recent enforcement actions by the FTC directly speak to the plainly-illegal, dangerous, and fundamentally unfair nature of Apple's conduct.

113.   For example, in August 2022, the Commission filed suit against the data broker Kochava, Inc.

> [F]or selling geolocation data from hundreds of millions of mobile devices that can be used to trace the movements of individuals to and from sensitive locations. Kochava's data can reveal people's visits to reproductive health clinics, places of worship, homeless and domestic violence shelters, and addiction recovery facilities. The FTC alleges that by selling data tracking people, Kochava is enabling others to identify individuals and exposing them to threats of stigma, stalking, discrimination, job loss, and even physical violence.[85]

114.   Per the Commission, the lawsuit involves Kochava's "vast troves of location information derived from hundreds of millions of mobile devices….People are often unaware that their location data is being purchased and shared by Kochava and have no control over its sale or use."[86]

---

[84] Kyle Barr, *Apple Quietly Rolls Out New Updates That Could Prevent AirTag Stalking*, Gizmodo (Dec. 22, 2022) (available at https://gizmodo.com/apple-airtags-stalking-tracking-1849922603)

[85] Federal Trade Commission, "*FTC Sues Kochava for Selling Data that Tracks People at Reproductive Health Clinics, Places of Worship, and Other Sensitive Locations*" (August 29, 2022) (available at https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-sues-kochava-selling-data-tracks-people-reproductive-health-clinics-places-worship-other)

[86] *Id.*

115.    Risks associated with the unwanted collection of location data include identification of individuals' home addresses, and, more broadly, "puts consumers at significant risk. The company's data allows purchasers to track people at sensitive locations that could reveal information about their personal health decisions, religious beliefs, and steps they are taking to protect themselves from abusers. The release of this data could expose them to stigma, discrimination, physical violence, emotional distress, and other harms."[87]

116.    Such acts and practices "reveal consumers' visits to sensitive locations, including, among others, locations associated with medical care, reproductive health, religious worship, mental health, temporary shelters, such as shelters for the homeless, domestic violence survivors, or other at-risk populations, and addiction recovery" and, in turn "cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition." Accordingly, they "constitute unfair acts or practices in violation of Section 5 of the FTC Act."[88]

117.    The enforcement action against Kochava is not an outlier.  In 2019, the FTC brought an enforcement action against Retina-X, a company accused of creating "stalking apps," that could be placed on users phones in order to surreptitiously surveil them.  Like the Kochava action, and like the instant action against Apple, "these apps were designed to run surreptitiously in the background and are uniquely suited to illegal and dangerous uses. Under these circumstances, we will seek to hold app developers accountable for designing and marketing a dangerous product."[89]

118.    There, as here, the defendant "sold monitoring products and services that required circumventing certain security protections implemented by the Mobile Device operating system

---

[87] *Id.*

[88] Complaint, *Federal Trade Commission v. Kochava, Inc.*, Case No. 2:22-cv-377 (D. Idaho), Dkt. No. 1 at ¶¶ 36-38.

[89] Federal Trade Commission, "*FTC Brings First Case Against Developers of 'Stalking' Apps*," (October 22, 2019) (available at https://www.ftc.gov/news-events/news/press-releases/2019/10/ftc-brings-first-case-against-developers-stalking-apps)

36

COMPLAINT

or manufacturer, and did so without taking reasonable steps to ensure that the monitoring products and services will be used only for legitimate and lawful purposes by the purchaser. Respondents' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. This practice is an unfair act or practice [in violation of the FTC Act]"[90]

### I.   Plaintiff Tonya Harris's Experience With AirTags.

119.   Tonya Harris is a county sheriff residing in Ohio.  From April to May 2022, she was stalked—via an AirTag—by an ex-boyfriend, who was also in law enforcement.

120.   In April 2022, shortly before Easter and following a breakup with the aforementioned boyfriend, Ms. Harris began to receive comments from her ex, indicating that he knew where she'd been at all times.

121.   Ms. Harris looked for some kind of tracking device on her car, but could not find anything.  During this time, she would occasionally hear a beep while driving, but attributed the sound to her children's toys or devices.

122.   In the ensuing weeks, she stayed at a friend's house one night and woke up to find that her friend's car had been vandalized.  The friend's house had a Ring camera that caught the perpetrator on video, but the quality was insufficient to identify the person.

123.   Ms. Harris continued to be suspicious, and conducted an internet search on types of mobile trackers and how to identify them.  She downloaded the Tracker Detect app and, upon the app pairing with the AirTag in her car and making the AirTag beep, she realized that these were the sounds she had been hearing for the past weeks.

124.   Ms. Harris found the AirTag under the carpet of the passenger side of her car, and figured out how to identify the last four digits of the phone number associated with the device. These numbers matched the phone number of her suspected stalker.

---

[90] *In the Matter of Retina-X Studios, LLC, a limited liability company; and James N. Johns, Jr., individually and as sole member of Retina-X Studios, LLC.*, FTC Matter/File Number 172-3118, Complaint, at ¶ 32.

125. Ms. Harris confronted her stalker, who denied placing the AirTag. Several weeks later, the stalker made threats to Ms. Harris over text. At this point, she went to the police (where the stalker worked) and provided the texts and the AirTag. The police filed charges. In October 2022, the stalker pled guilty to Attempted Menacing by Stalking and agreed to a five-year probation. As a result, he then lost his job in January 2023.

126. Following the discovery of the AirTag, Ms. Harris found herself compulsively running her Tracker Detect app, for fear that new devices were placed in her car or belongings. She became increasingly anxious, with her senses heightened every time she was outside of her home. While she carries a gun for work, she purchased a gun to carry with her while off-duty, a behavior she never before exhibited. She felt fearful whenever she went out, either by herself or with her daughters. As a result of the unwanted tracking, Ms. Harris experienced severe depression and anxiety, for which she was prescribed medication, and spent six months seeing a therapist. In general, she feels more withdrawn and distrustful of people.

127. Each time her stalker sought to amend his probation or sought leave of court to lessen his penalties, she felt terrified, continually ill-at-ease in her surroundings, and always on edge. She finds herself wondering why the stalker did it, and how long it could have gone on if he hadn't been caught on the Ring camera.

128. For years followig the discovery of the AirTags, she remained uncertain, fearful, and anxious as to whether there were additional AirTags, or whether he will place them on her car again. Ms. Harris purchased security cameras for her home in order to monitor against such an occurrence.

129. Further, because the stalker was a police officer, Ms. Harris must interact with his co-workers, and some of those people feel that she betrayed a code of silence that they believe required her to turn a blind eye to his malfeasance. Ms. Harris was unable to work for a period in the aftermath of the stalking.

130. Generally, Ms. Harris finds it difficult to trust people, especially men. She is concerned about the ways in which this experience may have affected or may affect her

COMPLAINT

daughters. And, as noted above, she was pressured by some of her co-workers in law enforcement to drop the charges against her stalker.

## CAUSES OF ACTION[91]

### COUNT I
### *California Law*
### (Negligence)

131. Plaintiff repeats and realleges all preceding paragraphs contained herein.

132. Apple owed Plaintiff a duty of care in its design, marketing, and introduction into the market of its AirTags. This duty is evidenced by, *inter alia*, Apple's unique position to monitor Plaintiff's behavior through AirTags' access to Apple's vast network of mobile devices, which in turn are used to locate Plaintiff with unparalleled reach and precision. It is further supported by the surreptitious and non-intuitive nature of Defendant's tracking.

133. Furthermore, Apple's duty of care extends to Plaintiff because Apple put Plaintiff at an unreasonable risk of harm through the reasonably foreseeable actions of third-party stalkers. Apple's duty of care is cognizable because (1) the harm resulting from the malicious use of Apple's AirTags by third parties to stalk Plaintiff was foreseeable to Apple; (2) Plaintiff has suffered harm resulting from such stalking; (3) there is a logical causal connection between Apple's design, marketing, and introduction into the market of its AirTags and the intervening stalking that harmed Plaintiff; (4) there is moral blame attached to Apple's conduct in light of its efforts to minimize concerns about threats surrounding AirTags and its failure to cooperate with law enforcement in response to AirTag stalking; (5) the policy of preventing future harm, in the context of unwanted and unconsented location tracking, is enshrined in legislatively declared policy, including *inter alia* the Constitutional Right to Privacy (*see* California Constitution Article 1, Section 1) and Cal. Pen. Code § 630, *et seq.*; and (6) any burden on imposing such a duty on Apple is outweighed by compelling policy interests that will benefit the public by such imposition.

---

[91] As set forth above, Plaintiff asserts that California law applies to the entirety of Plaintiff's claims. In the alternative, Plaintiff asserts claims under Ohio law.

134. Apple breached its duty of care by rushing AirTags to market with insufficient safeguards to prohibit their use for stalking purposes.

135. This breach of duty on the part of Apple was the proximate or legal cause of injury suffered by Plaintiff. At minimum, (1) introducing a tracking device into the stream of commerce, (2) which Apple knew would create a risk of being purchased and used for stalking, and (3) which *did* result in that anticipated misuse plainly caused the harm suffered by Plaintiff. Regardless of whether or when Plaintiff became aware of the AirTag or AirTags tracking her, the AirTag, itself, was the *sine qua non* of her harm.

136. Beyond that, however, and merely as an illustration for purposes of a challenge to the pleadings—and while reserving all rights to make further averments based on the allegations contained herein and in response to forthcoming challenges from Defendant—Plaintiff further avers that additional facts identify Apple's AirTags as the proximate cause of her harm. As an Android user, Ms. Harris received no alerts regarding AirTags during the duration of being stalked, thereby subjecting her to ongoing harm and abuse.

137. As a result of Apple's actions, Plaintiff seeks injunctive relief, as well as damages and punitive damages in an amount to be determined at trial. Plaintiff seeks punitive damages because Apple's actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiff and made in conscious disregard of Plaintiff's rights. Punitive damages are warranted to deter Apple from engaging in future misconduct.

## COUNT II
### *California Law*
### (Strict Liability – Design Defect – Risk-Benefit Test)

138. Plaintiff repeats and realleges all preceding paragraphs contained herein.

139. Apple manufactures, distributes, and sells its AirTag product.

140. The AirTag was defectively designed.

141. Plaintiff was harmed as a result of the AirTag's design defect.

142. The AirTag's design defect was a substantial factor in causing Plaintiff's harm.

143.    The benefits of Apple's AirTag design do not outweigh the risks of the design. Consideration of the following factors—the gravity of the potential harm caused by the design defect (*i.e.*, its propensity for use in stalking and other crimes); the likelihood that this harm would occur; the feasibility of an alternative safer design at the time of manufacture; the cost of an alternative design; and any disadvantages of an alternative design—all weigh in favor of Plaintiff, and make clear that the risks associated with the AirTag outweigh the benefits.

144.    As a result of Apple's actions, Plaintiff seeks injunctive relief, as well as damages and punitive damages in an amount to be determined at trial.  Plaintiff seeks punitive damages because Apple's actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiff and made in conscious disregard of Plaintiff's rights.  Punitive damages are warranted to deter Apple from engaging in future misconduct.

**COUNT III**
*California Law*
**(California Bus. and Prof. Code § 17200, *et seq.* – Unlawful Prong)**

145.    Plaintiff repeats and realleges all preceding paragraphs contained herein.

146.    As set forth above, Apple's conduct amounts to acts of negligence and product liability.  Each of these independent violations of law also serves as predicate violations of the UCL's unlawful prong.

147.    Plaintiff has standing to pursue this claim as Plaintiff suffered injury in fact and has lost money or property as a result of Apple's actions as set forth herein. Specifically, as a result of being stalked, and in an effort to protect herself from further harm from her stalker that may be facilitated by the AirTag, Ms. Harris purchased security cameras for her home.  Further, as a result of being stalked, she missed work for several days.

148.    Pursuant to section 17203 of the UCL, Plaintiff seeks an order of this Court enjoining Apple from engaging in the unlawful business practices alleged herein in connection with the sale of AirTags.

## COUNT IV
### *California Law*
### (California Bus. and Prof. Code § 17200, *et seq*. – Unfair Prong)

149. Plaintiff repeats and realleges all preceding paragraphs contained herein.

150. Apple's business practices, as alleged herein, are unfair because its conduct in releasing AirTags into the marketplace is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. The gravity of the harm to consumers is not outweighed by the utility of Apple's conduct.

151. Apple's business practices are also unfair because they undermine public policy, which is tethered to specific statutory provisions, including but not limited to the California Invasion of Privacy Act (Cal. Pen. Code § 630, *et seq*.) and the California Constitutional Right to Privacy.

152. Further, Apple's business practices are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the injury.

153. There were reasonably available alternatives to further Apple's legitimate business interests, other than the conduct described above.

154. Apple's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Apple is continuing to sell AirTags.

155. As set forth in paragraph 147 *supra*, incorporated herein, Plaintiff has standing to pursue this claim as Plaintiff suffered injury in fact and has lost money or property as a result of Apple's actions.

156. Pursuant to section 17203 of the UCL, Plaintiff seeks an order of this Court enjoining Apple from engaging in the unlawful business practices alleged herein in connection with the sale of AirTags.

## COUNT V
### *Ohio Negligence*

157. Plaintiff repeats and realleges all preceding paragraphs contained herein.

COMPLAINT

158.    Apple owed Plaintiff a duty of reasonable care in its design, marketing, and introduction into the market of its AirTags.  Under Ohio law, the existence of a duty depends primarily on the foreseeability of the Plaintiff's injury. *See, e.g.*, *Menifee v. Ohio Welding Products, Inc.* (1984) 15 Ohio St.3d 75, 77 [472 N.E.2d 707, 710]. The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. *Id.*

159.    As detailed in the paragraphs above, Apple's course of action in designing, marketing, and rushing AirTags to market without adequate safety features; without the safety features Apple itself determined were needed to protect people from unwanted tracking; and without the safety features it represented to the public were present for AirTag created a foreseeable risk of injury of the type Plaintiff suffered here. Apple absolutely knew, prior to releasing AirTags into the market, that third parties would use it to illegally track and stalk people. But, instead of developing its safety features more robustly, Apple released AirTags with safety features it knew were inadequate and underdeveloped. As a result, Apple increased Plaintiff's risk of harm and had a duty to protect Plaintiff from the risk of harm it created.

160.    Apple's duty of care here is further supported by "the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Blanton v. Pine Creek Farms* (1995) 100 Ohio App.3d 677, 685 [654 N.E.2d 1027, 1032]. Here, those facts include that Apple is the party who designed, controls, and sells for profit the technology that feeds the precise physical locations of non-consenting and/or unaware humans to *any* third party who purchases the product and plants it on someone's person or vehicle. The duty is also evidenced by the surreptitious and non-intuitive nature of AirTag tracking and Apple's unique and unparalleled ability to monitor Plaintiff's and third-party stalker behavior through AirTags' access to Apple's vast network of mobile devices.

161.    Apple's duty of care is further supported by the fact that the harm was extremely likely, if not virtually certain, to occur; because the magnitude of the burden to guard against the foreseeable injury is most feasible with respect to Apple as the party who designed and controls the products and networks enabling AirTags and as the party who profits from the sale of

43

COMPLAINT

AirTags; and because public and legislative policy considerations (including the reasonable expectations of parties and society) favor placing the burden on Apple.

162. The legislative policy of Ohio further supports that Apple has a duty to protect individuals from unauthorized electronic surveillance of their persons, movements, and private affairs. Under Ohio Rev. Code Ann. § 2903.216, no person shall knowingly "install a tracking device or tracking application on another person's property without the other person's consent *or cause a tracking device or tracking application to track the position or movement of another person or another person's property without the other person's consent*" (emphasis added). Apple manufactured and placed into commerce small, highly affordable, tracking devices with inadequate safeguards which facilitated precisely the conduct this statute was intended to prevent. Apple did so with knowledge, alleged and detailed in the paragraphs above, that its product would be used to commit the very conduct criminalized by statute (in Ohio and more broadly across the U.S.). A manufacturer in Apple's position has a duty under Ohio public policy to take reasonable steps to protect the class of persons these statutes were designed to protect.

163. Apple further owed Plaintiff a duty of care arising from its voluntary undertaking in designing, marketing, and deploying the inadequate safeguards associated with AirTags. Under Ohio law, a voluntary act gratuitously undertaken must be performed with due care under the circumstances. *Briere v. Lathrop Co.* (1970) 22 Ohio St.2d 166, 172 [258 N.E.2d 597, 602]. Apple did not merely manufacture a product, but affirmatively undertook to design and deploy a compact, low-cost, location-tracking device equipped with safeguards that it represented to the public as protective against stalking and other misuse. By voluntarily implementing those safeguards, Apple assumed a duty to perform that undertaking with reasonable care, and Apple's failure to exercise such care increased Plaintiff's risk of harm.

164. Apple breached its duty of care by rushing AirTags to market with inadequate safeguards to prevent their use for stalking purposes.

165. This breach of duty by Apple was the cause in fact of Plaintiff's injury because absent Apple's conduct, the AirTag stalking would not have occurred. *E.g.*, *Clough v. Watkins* (Ct.App.) 2020-Ohio-3446, ¶ 31.

166. This breach of duty by Apple was also the proximate and legal cause of Plaintiff's injury because Plaintiff's injury was the natural, foreseeable, and probable consequence of Apple's conduct in rushing its AirTags to market without adequate safety features. At minimum, Apple introduced its tracking device into the stream of commerce; Apple knew third parties would inevitably purchase and use the tracking device for stalking and could have but did not develop adequate safety features; and that anticipated misuse did, in fact, occur and caused the harm suffered by Plaintiff.

167. Apple's breach of duty is further apparent because Apple "cause[d] a tracking device or tracking application to track the position or movement of another person or another person's property without the other person's consent" in violation of Ohio Rev. Code Ann. § 2903.216. Moreover, the stalking conduct here was foreseeable. It was the precise risk Apple's design enabled and against which Apple could have but knowingly failed to guard against.

168. As a direct and proximate result of Apple's negligence, Plaintiff suffered actual damages, including costs associated with buying a new security camera for her home and an off-duty firearm for protection; medical expenses; mental suffering; depression; loss of enjoyment of life; anxiety; fear; and severe emotional distress.

169. Plaintiff further seeks punitive damages in an amount to be determined at trial because Apple's actions constituted actual malice and conscious disregard for the rights and safety of other persons that has a great probability of causing harm. Punitive damages are warranted to deter Apple from engaging in future misconduct.

### COUNT VI
#### *Ohio Strict Liability – Design Defect – Risk-Benefit Test*

170. Plaintiff repeats and realleges all preceding paragraphs contained herein.

171. Apple manufactures, distributes, and sells its AirTag product.

172. In Ohio, the manufacturer and designer of a product owes a "duty of reasonable care to design a product that is reasonably safe for its intended use, and for other uses which are foreseeably probable." *Jones v. White Motor Corp.* (1978) 61 Ohio App.2d 162, 168 [401 N.E.2d 223, 227].

173. Further, Apple's AirTag design was defective and unreasonably dangerous because at the time it left the control of Apple, the foreseeable risks associated with its design or formulation exceeded the benefits associated with that design or formulation. Ohio Rev. Code Ann. 2307.75.

174. The AirTag's susceptibility to misuse by third-party wrongdoers was a condition of the product resulting from its design, that made the product defective and unreasonably dangerous at the time the product left Apple's control, and which proximately caused Plaintiff's injury.

175. The foreseeable risks associated with the AirTag outweighed any purported benefits:

    a. The nature and magnitude of the risks of harm associated with that design in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was severe in that the AirTag enabled virtually anybody to track someone's precise location in real-time without their knowledge, no one was exempt from this risk; and Apple knew that it was virtually certain to occur.

    b. The awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm was low and not at all open and obvious. Apple affirmatively misled the public to believe AirTags were reasonably safe, and that their mobile devices would warn them if they were being tracked. Victims, including Plaintiff, often did not know they were being stalked for days, weeks, or longer.

    c. The likelihood that that design would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was very high. Apple absolutely knew their products would be used to track people without their consent or knowledge, ultimately resulting in severe emotional distress, risk of harm, and even death for numerous individuals.

    d. The design of the AirTag did not conform to any applicable public or private product standard that was in effect when the product left the control of its

manufacturer, including for example, the recommendations of domestic abuse advocacy organizations.

   e.   The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation, is low relative to the magnitude and severity of its inherent safety risks (allowing a criminal third-third party to find anyone, anytime, anywhere).

   f.   The technical and economic feasibility of using an alternative design was high. As detailed in the paragraphs above and incorporated herein, Apple designed and developed better safety features but rushed its product to market without those features.

   g.   The nature and magnitude of any foreseeable risks associated with an alternative design or formulation is low as the enhanced safety features would have served only to increase awareness of unwanted tracking by unsuspecting victims.

176.   The AirTag's design defect was the proximate cause of Plaintiff's injury because Plaintiff's injury was foreseeable as a result of Apple's release of AirTags lacking adequate safety features, and without the release of the AirTag, Plaintiff's harm would not have occurred.

177.   As a direct and proximate result of Apple's defective product, Plaintiff suffered actual damages, including costs associated with buying a new security camera for her home and an off-duty firearm for protection; medical expenses; mental suffering; depression; loss of enjoyment of life; anxiety; fear; and severe emotional distress.

178.   Plaintiff further seeks punitive damages in an amount to be determined at trial because Apple's actions constituted actual malice and conscious disregard for the rights and safety of other persons that has a great probability of causing harm. Punitive damages are warranted to deter Apple from engaging in future misconduct.

## COUNT VII
### *Ohio - Intrusion upon Seclusion*

179.   Plaintiff repeats and realleges all preceding paragraphs contained herein.

COMPLAINT

180. Apple intentionally intruded on and into Plaintiff's solitude, seclusion, and private affairs by intentionally geolocating Plaintiff.

181. Apple committed an unauthorized and intentional intrusion or prying into the Plaintiff's seclusion by creating a product which could (and did) constantly transmit Plaintiff's precise physical location to anyone who purchased and planted an AirTag on Plaintiff's person or vehicle.

182. The matter intruded on—Plaintiff's constant, precise physical location—was private.

183. Plaintiff had a reasonable expectation of privacy in her constant, precise, physical location.

184. This sort of intrusion—transmitting one's constant, precise physical location to known or unknown third parties without one's knowledge or consent—would be highly offensive and objectionable to a reasonable person, and likely to cause mental suffering. This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in *Carpenter v. United States*), legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking, particularly in the context of stalking and abuse.

185. As a direct and proximate result of Apple's intrusion, Plaintiff suffered actual damages, including costs associated with buying a new security camera for her home and an off-duty firearm for protection; medical expenses; mental suffering; depression; loss of enjoyment of life; anxiety; fear; and severe emotional distress. Plaintiff is entitled to recovery against Apple in an amount to be determined at trial.

186. Plaintiff further seeks punitive damages in an amount to be determined at trial because Apple's actions constituted actual malice and conscious disregard for the rights and safety of other persons that has a great probability of causing harm. Punitive damages are warranted to deter Apple from engaging in future misconduct.

**RELIEF REQUESTED**

Plaintiff requests the Court to enter judgment against Defendant, and accordingly, requests the following:

a.   That judgment be entered against Defendant and in favor of Plaintiff on the causes of action set forth in this Complaint;

b.   That judgment be entered against Defendant for all injunctive, declaratory, and other equitable relief sought, including but not limited to an order enjoining Apple from further unlawful or unfair practices with respect to the design, manufacture, and release into the market of its AirTags;

c.   That Plaintiff be awarded all damages and punitive damages, in an amount to be determined at trial;

d.   Reasonable attorney's fees and litigation costs, pursuant to Cal. Civ. Proc. Code § 1021.5; and

e.   All other such other relief as the Court may deem appropriate.

Dated:  May 1, 2026

     _/s/ Gillian L. Wade_____
     Gillian L. Wade, State Bar No. 229124
     gwade@waykayslay.com
     Sara D. Avila, State Bar No. 263213
     sara@waykayslay.com
     Collins Kilgore, State Bar No. 295084
     ckilgore@waykayslay.com
     Marc A. Castaneda, State Bar No. 299001
     marc@waykayslay.com
     WADE KILPELA SLADE LLP
     2450 Colorado Ave.
     Suite 100E
     Santa Monica, CA 90404
     T: (310)667-7273

     Edwin J. Kilpela, Jr. (*pro hac vice* application forthcoming)
     ek@waykayslay.com
     WADE KILPELA SLADE LLP
     6425 Living Pl. Suite 200
     Pittsburgh, PA 15206

49

David Slade (*pro hac vice* application forthcoming)
slade@waykayslay.com
WADE KILPELA SLADE LLP
1 Riverfront Place
Suite 745
North Little Rock, AR
72114

*Attorneys for Plaintiff Tonya Harris*

COMPLAINT